Dr. Cosette Faust NEWTON et vir,
Appellants,

v.

The DALLAS MORNING NEWS, Appellee.

No. 16313.

Court of Civil Appeals of Texas.

Dallas.

Feb. 21, 1964.

Fanning, Billings, Harper, Pierce & Gilley, Dallas, for appellants.

Locke, Purnell, Boren, Laney & Neely; Stanley E. Neely and Larry M. Lesh, Dallas, for appellee.

WILLIAMS, Justice.

Action for libel. This appeal is from the judgment of the District Court sustaining appellee's motion to dismiss appellants' cause of action. We affirm that judgment.

■ Since the trial court disposed of this case by sustaining a motion to dismiss thereby holding that appellants' petition failed to state a cause of action, we must test the propriety of this action in the same manner as previously done under the general demurrer practice and in so doing we must assume the truth of the allegations contained in the petition. Lone Star Gas Co. v. Murchison, Tex.Civ.App., 353 S.W.2d 870.

Appellants allege that they filed suit against the Town of Highland Park requesting the issuance of a writ of mandamus compelling the building inspector of Highland Park to issue a certain permit; that subsequently, appellants sued the Town of Highland Park praying for an injunction enjoining Highland Park officials from entering on their property located at 4005 Miramar Avenue, and from destroying or damaging appellants' property; that Highland Park cross-acted against appellants, alleging that appellants' residence and swimming pool constitute a public nuisance and praying for a mandatory injunction ordering the demolition of these structures and removal of debris from the premises; that one of appellants' neighbors intervened in the latter suit, praying for damages in the amount of $30,000 for loss in value, depreciation and damage to the neighboring property; that all those suits and cross-actions were settled; that the district judge commented on such settlement to a Dallas News reporter; that shortly thereafter, the following language appeared in an article in the Dallas Morning News:

"The feud Dr. Newton and her husband, Dr. F. H. Newton, waged with the Town of Highland Park and various neighbors centers around the Newton's long-abandoned controversial home at 4005 Miramar * * * Judge Armstrong said the agreement allowed both sides a measure of victory. 'I think we have accomplished something workable here,' he said. 'Highland Park sought destruction of the house and the Newtons countered with a $30,-000.00 damage suit against neighbors.'"

Appellants alleged that the quoted publication was false, scandalous and libelous and subjected their name and reputation to disgrace and contempt. It was further alleged that appellee had conspired, over a period of twenty years, to damage the good name, fame and reputation of appellants by publishing similar false, scandalous and libelous remarks (though such other statements are not quoted) and that such publication above referred to was done with malice, all of which caused appellants to suffer damages in the sum of $1,000,000.

Appellee's motion to dismiss alleged (1) that the publication complained of was not libelous, as a matter of law; (2) that, as a matter of law, the publication was a fair, true and impartial account of the proceedings in a court of justice and therefore privileged under Sec. 1, Art. 5432, Vernon's Ann.Civ.St.; and (3) as a matter of law, the publication complained of was a reasonable and fair comment or criticism of a public matter of public concern, and therefore privileged under Sec. 4, Art. 5432, V.A.C.S.

In three points of error, briefed together, appellants assail the action of the trial court in sustaining the above motion because (1) there are genuine issues of fact as to the libelous nature of the statements complained of and published by appellee; (2) there are genuine issues of fact as to whether or not the publication complained of was a fair, true and impartial account of the proceedings in a court of justice, and thereby privileged; and (3) there are genuine issues of fact as to whether or not the publication complained of was a reasonable and fair comment or criticism as a matter of public concern and therefore privileged.

The primary question presented is whether the publication complained of is libelous as a matter of law.

Article 5430, V.A.C.S. defines libel:

"A libel is a defamation expressed in printing or writing, or by signs and pictures, or drawings tending to blacken the memory of the dead, or tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity, or virtue, or reputation of any one, or to publish the natural defects of any one and thereby expose such person to public hatred, ridicule, or financial injury."

The Legislature subsequently provided that certain matters should be deemed privileged and not be made the basis of any action for libel. The first privileged matter is a fair, true and impartial account of the proceedings in a court of justice. Another is a reasonable and fair comment or criticism of the official acts of public officials and of other matters of public concern published for general information. Secs. 1 and 4, Art. 5432, V.A.C.S.

The Commission of Appeals, in Southern Publishing Co. v. Foster, 53 S.W.2d 1014, clearly enunciated the rules applicable for a decision of cases of this kind. The court said:

"The rule is established that, when the language used in the publication is ambiguous so that extrinsic evidence is needed to determine its character as to its being actionable or not actionable, if a jury is demanded to try the cause, it is the duty of the court to submit to the jury, under proper instructions, the issue as to whether or not the language used is libelous. (Citing cases.)"

The court continued:

"On the other hand, if the language used in the matter published is clear and unambiguous and manifestly wanting in a defamatory meaning and shows on its face that it is not libelous, it is the duty of the court to so construe the language. In determining the question whether the publication was libelous or not, the words used in the publication must be construed as a whole, giving to all the words contained therein their ordinary meaning as read and construed by persons of ordinary intelligence. (Citing cases.)"

The court continued and citing Newell, Slander and Libel (4th Ed.) page 291, said:

"Where the words can bear but one meaning, and that is obviously not defamatory, no innuendo or other allegation in the pleadings can make them so, and no action lies. No parol evidence is admissible to explain the meaning of ordinary English words, in the absence of special circumstances showing that the words do not bear their usual signification. 'It is not right to say that a judge is to affect not to know what everybody else knows—the ordinary use of the English language.' "

An excellent summary of the rules relating to the function of the court and the jury in a case of this kind is found in Restatement of the Law, TORTS, Sec. 614, Page 304, as follows:

"In the determination of the question whether a given communication is defamatory, two questions may arise: first, whether the communication reasonably conveyed the meaning ascribed to it by the plaintiff (see § 563), and, second, whether such meaning is defamatory in character (see § 559). Under the rule stated in this Section, the court determines whether the communication is capable of bearing the meaning ascribed to it by the plaintiff and whether the meaning so ascribed and carried is capable of being defamatory. If the court decides against the plaintiff upon either of these questions, there is no further question for the jury to determine and the case is ended. If, on the other

hand, the judge decides that the communication is capable of bearing a meaning which may reasonably be regarded as defamatory, there is the further question for the jury, whether the communication was in fact understood by the recipient thereof in a sense which made it defamatory."

These rules have been reannounced by our Supreme Court in Fitzjarrald v. Panhandle Publishing Co., 149 Tex. 87, 228 S.W.2d 499, wherein the court again says that whether a publication is privileged or not is generally a question of law for the court to determine. If the language is not ambiguous, or where the facts and circumstances surrounding the publication are undisputed, it is for the court to determine whether or not it was privileged. Also, said the court, in passing upon the language complained of as libelous, it must be considered in the light of all the facts and circumstances under which it was used. See also 36 Tex. Jur.2d, Secs. 6 and 26, Libel and Slander.

In the light of these well established rules we turn now to consider appellants' principal contention on this appeal, which is that the use of the word "feud" and the statement that appellants had filed a suit for damages against the Town of Highland Park and their neighbors constituted a legal cause of action for libel. Appellants contend both in brief and in oral argument that the publication was ambiguous and therefore within the rule which required such ambiguity to be submitted to a jury. We find ourselves unable to agree with appellants as to any of their contentions.

Webster's New International Dictionary, 2nd Edition, defines the word "feud" as follows:

"1. Enmity; hostility. 2. A contention or quarrel; bitter mutual ill feeling and hostility * * *."

In this ordinary meaning of the term "feud" one can only reasonably conclude that appellants had a quarrel with the Town of Highland Park and their neighbors. The word does not connote an evil meaning, per se. We cannot conceive that such an ordinary word, used commonly in everyday conversation, could result in the mischief denounced by our statutes or claimed by appellants. The factual background of this case is not new to this court. In 1955 we had occasion to review the long history of litigation between appellants and the Town of Highland Park in the case of Newton v. Town of Highland Park, Tex. Civ.App., 282 S.W.2d 266. There, in commenting upon the factual background of the litigation, we said·

"This controversy resembles the Hundred Years War in that it has gone on intermittently and bitterly for a long time."

Thereafter, in a lengthy opinion, we reviewed the longstanding controversy between the parties now before this court. These matters are public knowledge for many years and cannot reasonably be said to cause surprise or concern or to subject appellants to ridicule or contempt among their friends and neighbors.

Even assuming the fact that the allegation concerning appellants' $30,000 suit against their neighbors was untrue, which it undoubtedly was untrue, such publication, within the above rules, cannot be said to be of such a nature as to subject appellants to disgrace and contempt. There is nothing inherently wrong in the action of one neighbor suing another neighbor. This is especially true in view of the long history of litigation referred to and explained in detail in our previous opinion in Newton v. Town of Highland Park, supra.

One of the most recent cases which discusses the applicable rule is Rawlins v. McKee, Tex.Civ.App., 327 S.W.2d 633, err. ref. n. r. e., in which the publication referred to plaintiff as a "radical" and "left-winger". Plaintiff's petition was dismissed, as in this case, and the appellate court, in affirming such action held that such reference to plaintiff, even if untrue, was not

libelous, as a matter of law, under Article 5430, V.A.C.S., since such language does not expose plaintiff to public hatred, contempt, or ridicule, or impeach the honesty, integrity, or virtue, or reputation of plaintiff. The court said:

> "It is universally recognized that an appellation may be quite false, abusive, unpleasant and objectionable to the person designated without being defamatory. * * * In Texas, of course, not all defamations necessarily come within the definition of a 'libel' under Art. 5430. It must also have the drastic results described therein."

After careful consideration of the allegations in appellants' pleading we have concluded that the language complained of is not libelous within the meaning of Article 5430, V.A.C.S. We also conclude that the language is unambiguous and therefore there is no basis for the introduction of explanatory evidence before a jury. Snider v. Leatherwood, Tex.Civ.App., 49 S.W.2d 1107; Houston Chronicle Publishing Co. v. Thomas, Tex.Civ.App., 262 S.W. 243; Gartman v. Hedgpeth, Com.App., 138 Tex. 73, 157 S.W.2d 139, 138 A.L.R. 666; Herald-Post Publishing Co. v. Hervey, Tex. Civ.App., 282 S.W.2d 410; Allen v. Houston Chronicle Publishing Co., Tex.Civ. App., 109 S.W.2d 1135; Daughtry v. Blanket State Bank, Tex.Civ.App., 60 S.W.2d 272; Fuson v. Abilene Gas & Electric Co., Tex.Civ.App., 219 S.W. 208; and Deen v. Snyder, Tex.Civ.App., 57 S.W.2d 338.

Cases relied upon by appellants, such as Easley v. Express Publishing Co., Tex.Civ. App., 299 S.W.2d 782; Moore v. Leverett, Tex.Com.App., 52 S.W.2d 252; and Root v. Republic National Bank of Dallas, Tex. Civ.App., 337 S.W.2d 709, are all easily distinguishable. In each of those cases the court decided that the language used was ambiguous and required explanatory meaning which necessarily called for a jury determination.

■ Even if it could be said, *arguendo*, that the allegations in the publication were ambiguous, yet appellants cannot prevail for the simple reason that appellants' original petition fails to set forth any facts explaining the language used which might cause disgrace and contempt among their friends and neighbors. This court in O'Connor v. Dallas Cotton Exchange, Tex. Civ.App., 153 S.W.2d 266, quoting from 33 Am.Jur., Sec. 241, pages 219–221, said:

> "Where the statement complained of as defamatory is indirect in its terms and doubtful in its meaning, the complaint must, in order to state a cause of action, contain appropriate allegations, commonly known as the innuendo, designed to show the meaning of the publication and bring out its defamatory character and effect, by reference to the antecedent matters contained in the inducement and the colloquium."

See also Henderson v. Credit Clearing House, Tex.Civ.App., 204 S.W. 370, and Fessinger v. El Paso Times Co., Tex.Civ. App., 154 S.W. 1171.

■ We are also of the opinion that the publication complained of, when viewed in its appropriate setting, is clearly within the rule of privilege announced in Sec. 4 of Art. 5432, V.A.C.S. allowing a reasonable and fair comment or criticism of the official acts of public officials and of other matters of general public concern published for general information. Ray v. Times Publishing Co., Tex.Com.App., 12 S.W.2d 165; Express Publishing Co. v. Keeran, Tex. Com.App., 284 S.W. 913; Caylor v. Nunn, Tex.Civ.App., 235 S.W. 264; and Lundberg v. Brownsville Herald Publishing Co., Tex. Civ.App., 66 S.W.2d 375.

Finding no error, all of appellants' points are overruled, and the judgment of the trial court is affirmed.

Affirmed.