**Robert W. PAYNE and Judith E. Payne, Appellants,**

v.

**GRIMES REAL ESTATE CO., a corporation, and Louis W. Brakensiek and Janie M. Brakensiek, Respondents.**

**No. 46912.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 1, 1983.

William H. Leyhe, St. Louis, for appellants.

Morris E. Stokes, St. Charles, for respondents.

CRANDALL, Judge.

Robert and Judith Payne, the once-prospective purchasers of an unimproved residential building lot in St. Charles County, Missouri, appeal from an adverse judgment in their action against the erstwhile sellers and the realtor, Grimes Real Estate Co. (Grimes), to recover an earnest money deposit. We affirm.

Using a standard form "Sale Contract," the parties specified June 30, 1981, as the closing date and further provided there be "[c]ity water along front property line by closing date." The water line was not installed until July 30, 1981. The Paynes refused to close and demanded the return of their earnest money deposit. The demand was refused, resulting in this litigation.

Respondents contended and the trial court held that Grimes was empowered un-

der the following contract provision to extend the closing date by thirty days in order to complete installation of the water line and thus satisfy the only remaining condition precedent to the purchasers' performance:

> Both parties [i.e., purchasers and respondents Louis and Janie Brakensiek, the sellers] authorize [Grimes] to extend the closing date of this contract for a time not to exceed 30 days if said [Grimes] shall consider such extension necessary to complete financing, clearance of title, survey or other necessary arrangements.

The purchasers' first point on appeal invokes the rule ejusdem generis, that "where general words follow particular ones, the general ones will be limited in their meaning and restricted in their operation to things of like kind and nature with those particularly specified." *Cades v. Mosberger Lumber Co.,* 291 S.W. 178, 179 (Mo.App. 1927). They contend that installing the water line is so unlike "financing, clearance of title, [and] survey" that it cannot be among the "other necessary arrangements" that could justify Grimes' extension of the closing date.

■ The rule ejusdem generis is but one aid among many to fix the meaning of general terms, and it need not be used when (as here) it promises more hindrance than help. When "financing," "clearance of title" and "survey" are set outside the context of the parties' contract, the terms point to nothing in common that would identify anything else as being of a "like kind and nature." Thus, *apropos* to those disparate terms is the rule in *Cades v. Mosberger Lumber Co.,* 291 S.W. at 180, that "if the particular words ... include widely variant and different persons or things, the rule [ejusdem generis] does not apply, and the general words following the particular words must be construed as embracing something outside of that class."

■ The intendment of "other necessary arrangements" is clear, however, when we look to the kind and character of the parties' agreement, its purposes and the context. *See Wilson v. Owen,* 261 S.W.2d 19,

23 (Mo.1953). Under the contract's express provisions, the completion of purchasers' financing arrangements, the sellers' perfection of title, and a survey of the lot were all to be accomplished by the June closing date. This entailed "arrangements" that were "necessary" to close the sale—as did the installation of the water line along the front property line. The trial court, therefore, did not err in holding that the parties' contract authorized Grimes to extend the closing date in order to complete installation of the water line.

■ Purchasers' second point on appeal is that Grimes' extension of the contract's closing date violated the statute of frauds, § 432.010, RSMo (1978). They contend that "[a]ny extension of time for closing, in order to be binding, must be in writing." The statute provides, in its pertinent part:

> No action shall be brought ... upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them ... unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized ....

The parties' provision for an extension of the closing date was in the Sale Contract as set out earlier, and so satisfied any statute of frauds requirements. Grimes' act to effect the extension was simply the exercise of a power provided in the contract and, therefore, not within the statute.

Judgment affirmed.

REINHARD, J., concurs.

KAROHL, P.J., concurs in result in separate opinion.

KAROHL, Presiding Judge, concurring.

I concur in the result. The defendants-sellers' real estate agent added two typewritten provisions to the standard form real estate contract. The first provided, "City water along front property line by closing" and the second authorized the agent to ex-

tend closing if necessary to complete financing, clearance of title, survey or other necessary arrangements.

The principal opinion concludes that financing, title and survey are not members of a single class of specifics and for that reason the rule of construction, ejusdem generis, does not apply. Because each of these may apply to every real estate transaction they are related to one another and not disparate within the context of the contract.

However, "Presumptively, the intent of the parties to a contract is expressed by the natural and ordinary meaning of the language referable to it. Even seeming contradictions must be harmonized away if that be reasonably possible." *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264 (Mo. banc 1973). I would read both of the added provisions together. I would hold that city water was within "other necessary arrangements" by the specific agreement of the parties and that resort to the rule ejusdem generis is unnecessary. It is possible to ascertain the intention of the parties as garnered from the instrument as a whole, and it alone, and to give effect to that intention. *J.E. Hathman, Inc.,* 491 S.W.2d at 264.