**HOUSING AUTHORITY OF the CITY OF MANSFIELD, Missouri, Plaintiff-Respondent,**

v.

**Vickie L. ROVIG, Defendant-Appellant.**

**No. 13277.**

Missouri Court of Appeals, Southern District, Division One.

Sept. 4, 1984.

Scott B. Stinson, Mountain Grove, for plaintiff-respondent.

Robert B. Hankins, Springfield, for defendant-appellant.

TITUS, Judge.

Plaintiff (Housing Authority of Mansfield, Missouri) and defendant (Vickie L. Rovig) entered into a written agreement whereby plaintiff, as landlord, leased to defendant, as tenant, unit number 10 in a low income housing project owned and controlled by plaintiff. Alleging that defendant violated the lease by maintaining a dog in her rental unit during July and August 1982, that plaintiff notified defendant of such lease violation and had afforded defendant substantial administrative due process in accordance with lease provisions, plaintiff sued for possession of the rental unit and for costs. Following a trial to the court, that tribunal found in plaintiff's favor, adjudged that plaintiff have immediate possession of the rental unit and that defendant forthwith remove herself, her family and possessions from said property. Defendant appealed.

■ The lease consists of three legal-size typewritten pages dated April 3, 1980. Paragraph 2 appearing on the first page states the "agreement shall extend for a period of 1 year ... unless sooner terminated in accordance with the provisions herein." Albeit the alleged lease violation which prompted plaintiff's undertaking to terminate it was said to have occurred in the middle of 1982, or a little over one year after the contract expired, when a tenant (defendant here) holds over after normal termination, the law presumes the subsequent holding to be under and subject to the terms and conditions of the original lease unless the contrary be shown.

*Longmoor Corporation v. Jeffers,* 205 S.W.2d 234, 237–238[5] (Mo.App.1947); Anno: Tenant Holding Over—Covenants, 49 A.L.R.2d 480–495 (1956). As no "contrary" appears, as the subsequent "Lease Addendum" executed by both parties did not alter any of the contract provisions except the rental rate, and as the parties pose no question concerning the existence vel non of the original lease at the time of trial, we consider the initial agreement to be in esse at all pertinent times.

■ What the petition sought and what the court gave was judgment against defendant for possession of the rental unit. In other words, plaintiff sought possession and the judgment obliged by effecting a termination or forfeiture of the lease. Forfeiture of leases for breach of covenants or wrongful acts of the tenant is a harsh remedy likely to produce great hardship, if not oppression, and is not favored by the courts. To effectuate forfeiture of a lease every requirement of the law must be scrupulously observed, unless waived by agreement, and a covenant permitting a forfeiture will be strictly construed against the party invoking it and in favor of the tenant. *Independence Flying Service, Inc. v. Abitz,* 386 S.W.2d 399, 404[2–4] (Mo.1965). Furthermore, forfeiture of a lease will not be enforced for breach of a covenant, unless the breach is unequivocal. *J.E. Blank v. Lennox Land Co.,* 351 Mo. 932, 957, 174 S.W.2d 862, 868–869[10] (banc 1943).

Paragraph 6 of the lease appears on page 2 thereof and is entitled "Occupancy of the Dwelling Unit." The paragraph states that defendant, as tenant, "agrees" not to assign the lease nor to sublet or transfer possession of the premises. It also provides that defendant was not to accommodate boarders or lodgers without the written consent of management or to use the unit for purposes other than a family dwelling except for the reasonable accommodation of guests or visitors. The last sentence of the paragraph reads: "Tenant also agrees not to keep pets on the premises."

On the last or third page of the lease appears paragraph 10 titled "Termination

of the Lease." The third separate part of this paragraph deals with termination of the lease by plaintiff (landlord) and provides that notice of termination by plaintiff "may only be given for good cause, such as nonpayment of rent, serious or repeated damage to premises, creation of physical hazards, or over-income status."

It is of special interest to note that on August 11, 1982, plaintiff sent defendant a registered letter which purported to be an eviction notice. In addition to later general paragraphs anent fellow tenants' various complaints and defendant's entitlement to "a hearing upon the proposed eviction in the manner provided in Section II of this lease," the epistle's opening was that "This is an eviction notice to vacate the apartment ... within 30 days. The reason for the eviction is because you have a dog or dogs at your apartment." It is said that " '[t]he assertion of one ground of forfeiture, so as to terminate the tenancy, precludes the right to rely on another ground which existed at the same time, in an action involving a question of forfeiture.' " *Independence Flying Service, Inc., v. Abitz,* supra, 386 S.W.2d at 404[8], quoting 51 C.J.S. Landlord & Tenant § 117, at p. 701 (now appearing in 51C at p. 373).

As observed, supra, paragraph 10 of the lease provides the notice of termination by plaintiff could only be given "for good cause, such as nonpayment of rent, serious or repeated damage to premises, creation of physical hazards, or over-income status." No mention is made that plaintiff could terminate the contract "for good cause" because of defendant's violations of the lessee's agreements contained in paragraph 6 of the lease. Under the doctrine of ejusdem generis where specific words follow a general enumeration of a legal subject, application of the general term is restricted to objects similar in nature to those enumerated by the following specific words. 2A C. Sands, Sutherland, Statutory Construction, Intrinsic Aids, § 47.17, p. 103. However, the doctrine does not apply if the particular words refer to widely different and variant things. In such cases the general words preceding the particular

wording must be construed as embracing something outside of that class. *Payne v. Grimes Real Estate Co.,* 660 S.W.2d 755, 757[1, 2] (Mo.App.1983). In our opinion the rule ejusdem generis is not applicable here. When "nonpayment of rent," "serious or repeated damage to premises," "creation of physical hazards" and "over-income status" are set outside the context of the lease, the terms point to nothing in common. In other words, not one of the provisions derives any color from association with the others and each stands as a representative of a distinct class. The meaning then of the general expression "for good cause" is not affected or restricted by the heterogeneous particular wording following it, which enumerates subjects greatly different from one another. *State v. Eckhardt,* 232 Mo. 49, 53, 133 S.W. 321, 322[2] (1910).

A covenant, as that term is generally used with reference to a lease, imports an agreement that an act is already performed or will be performed in the future. An estate on condition is one with a qualification annexed by which it may be destroyed upon the happening of a particular event. The primary distinction between a covenant and a condition pertains to the remedy in case of a breach. If a remedy is predicated on a covenant, it is usually for the violator to respond in damages in an action at law, whereas the consequence of a breach of condition upon which the estate is granted is a forfeiture of the estate. The determination of whether a particular clause or provision of a lease creates a covenant or condition depends upon the intention of the parties as disclosed by the language used and, in case of ambiguous language, by the subject matter and the surrounding circumstances. Also of importance in determining whether a provision in a lease is a covenant or a condition is the rule that in doubtful cases a court should favor the construction of a covenant rather than a condition, as conditions are viewed with disfavor by the courts. 49 Am.Jur.2d, Landlord and Tenant, §§ 157 and 158, pp. 183–185. The termination clause appearing in paragraph 10 of the lease in question is anything but clear as to what constitutes "good cause" other than the particular enu-

merated circumstances, none of which remotely relates to keeping "pets on the premises." Considering the harshness of the forfeiture remedy in paragraph 10 and its remoteness to the agreements of defendant in paragraph 6, which contain no reference to forfeiture whatsoever, we are of a mind that had plaintiff desired any infraction of defendant's agreements in paragraph 6 to have justified a termination of the leasehold, it should have so provided in no uncertain terms. E.g., "Violation of any of the terms of this lease shall effect a forfeiture of the leasehold." Since the lease did not so provide and as the alleged breach appearing in paragraph 6 thereof can be viewed as nothing more than a violation of a covenant, as opposed to a violation of a condition, we hold the trial court erred in its judgment and so reverse the same.

It is so ordered.

FLANIGAN, P.J., and GREENE and CROW, JJ., concur.